**JEFFREY K. STARNES**
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT  59403
119 First Ave. North, Suite 300
Great Falls, MT  59403
Phone:  (406) 761-7715
FAX:  (406) 453-9973
E-mail:   Jeff.Starnes@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**FABJAN ALAMETI,**<br><br>Defendant. | CR 19-13-BU-DLC<br><br><br>**MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION IN LIMINE**<br>(Unopposed) |

## INTRODUCTION

COMES NOW The United States of America, by and through, Jeffrey K. Starnes, Assistant U.S. Attorney for the District of Montana, and hereby files this memorandum in support of its Unopposed Motion in *Limine*.  By this motion, the prosecution seeks a preliminary order from the Court to allow the United States to

1

take reasonable steps to protect from public disclosure, the true identity of an FBI confidential human source ("CHS") if that individual is called to testify at trial in this matter.

## BACKGROUND

The defendant, Fabjan Alameti, is charged by indictment with three counts of making a false statement to the FBI in a matter involving terrorism, in violation of 18 U.S.C. § 1001, and one count possessing a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3).  (Doc. 10).  The charges stem from an FBI investigation into Alameti's online activity that originally began in the Southern District of New York, where it is alleged that Alameti spoke with an FBI confidential human source ("CHS") and discussed, in earnest, his intentions to travel overseas and fight for ISIS, a designated Foreign Terrorist Organization ("FTO").  *See* Exhibit 1.[1]  The United States further alleges that Alameti discussed plans to conduct a potential attack in the United States, and that he considered targeting places such as a government building, gay club, Jewish temple, or US. Army recruiting center.  *Id.*

In March of 2019, Alameti travelled by bus from the Southern District of New York to the District of Montana.  *Id*. at 9.  On or about March 25, 2019,

---

[1] Exhibit 1 is the Affidavit in Support of Criminal Complaint originally filed against Alameti in this case.  *See* Case No: MJ-19-29-M-JCL.

2

Alameti spoke with the FBI and denied that he had ever talked about traveling overseas to fight for ISIS and asserted that he had never said that he wanted to hurt Americans or anyone in the military.  *Id.* at 12.  He also asserted that he had no desire to hurt people with guns.  *Id.*  On or about April 3, 2019, the FBI arrested Alameti when he took possession of a rifle at a firing range.  *Id.* at 17-18.

Alameti's conversations with the CHS took place between January and March 2019.  *See Id.*  Most of the conversations with the CHS took place over an encrypted electronic/text messaging application, which were preserved through various means.  *See Id.* at 3.  At trial, the United States may call the CHS as a witness to lay the foundation for his preserved communications with Alameti.  For the reasons set forth more fully below, the United States requests that the Court allow the CHS to testify under an alias and in a disguise to alter his appearance to the public.

## RELEVANT FACTS

1. ISIS is a designated FTO.  *See* Exhibit 1 at 2-3.

2. ISIS has publically and frequently encouraged its supporters in the West who cannot travel to Iraq and Syria to remain in place and conduct attacks. [2,3]

---

[2] Jessica Lewis McFate, Harleen Gambhir, Evan Sterling, Institute for the Study of War, *ISIS's Global Messaging Strategy Fact Sheet,* http://www.understandingwar.org/sites/default/files/GLOBAL%20ROLLUP%20Update.pdf (accessed July 31, 2019)

[3] The Institute for the Study of War is a non-partisan, non-profit, public policy research organization founded in 2007.  *See* http://www.understandingwar.org/who-we-are

3. The CHS is currently an operational source for the FBI who works on cases across multiple jurisdictions.

4. The CHS has family members who live in the Middle East.[4]

5. The majority of the CHS's work involves communicating online or via text messages with targets who claim to have affiliation with one or more designated FTOs.

6. The CHS communicates with individuals who claim to live in the Middle East.

7. When the CHS engages potential targets for the FBI, he typically uses an alias to communicate with targets, although he has inadvertently used his real name in the past, resulting in an admonishment from the FBI.

8. The United States believes that if the CHS is called as a witness and his true name or true image is revealed to the public, it could jeopardize his safety and/or the safety of his family members who continue to live in the Middle East. It could also impact the CHS's ability to participate in future national security investigations targeting individuals who are or claim to be affiliated with a designated FTO.

---

[4] References to the exact country or location where the CHS's family members live are intentionally omitted from this filing to protect their safety.

## DISCUSSION

As detailed more fully below, the United States moves the court to either seal the courtroom during the CHS's testimony; or, in the alternative, to allow the CHS to testify in disguise and under an alias.

The Sixth Amendment grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1119 (9th Cir. 2013). A criminal defendant's right to cross-examination includes the right to face physically those who testify against him and to ensure that the witness gives his statement before the jury so the jury may observe the witness's demeanor. *de Jesus-Casteneda*, 705 F.3d at 1119; *Coy v. Iowa,* 487 U.S. 1012, 1017 (1988); *Maryland v. Craig,* 497 U.S. 836, 851 (1990). However, this right is not unfettered: "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (*per curiam*) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination

5

that is effective in whatever way, and to whatever extent, the defense might wish." (emphasis in original)).

In *United States v. de Jesus-Casteneda*, 705 F.3d 1117, (9th Cir. 2013), a case of first impression in the Ninth Circuit, the Court considered whether a witness's testimony in disguise at trial violates the Confrontation Clause of the Sixth Amendment. In that case, the defendant was charged with possession with intent to distribute methamphetamine under 21 U.S.C. § 841(a). *See Id.* At trial, the United States called a confidential informant to testify, and requested that the witness testify in a disguise, consisting of a wig, sunglasses, and mustache. *See Id.* at 1119. This was done because the witness was involved in investigations of the "dangerous" Sinaloa Cartel, the disguise would guard against the "inherent dangers involved" in such cases, and "accommodate the public nature of [the] courtroom and yet hopefully protect [the witness's] identity." *Id.* (Internal quotation marks omitted). Over defense objection, the district court permitted the witness to testify in a mustache and wig but no sunglasses so his eyes could remain visible to the jury. *Id.* In reaching that decision, the district court determined that the government's request was "'not even a close question,' the reason for the disguise was 'obvious,' and that when weighed against the 'risks that have been presented,' the disguise was a 'very small impingement ... on the ability of the [jury] to judge [the [witness's]] credibility.'" *Id.*

The Ninth Circuit reviewed the district court's decision for an abuse of discretion. *Id.; United States v. Shryock*, 342 F.3d 948, 974 (9th Cir. 2003) (holding that a district court's decision to impose security measures is reviewed for abuse of discretion). In affirming the defendant's conviction, the Court held that the witness's disguise in the form of a wig and mustache was necessary to further an important state interest, namely, the witness's safety. *Id.* at 1120. *See also Morgan v. Bunnell,* 24 F.3d 49, 51 (9th Cir.1994) (recognizing a trial court's "grave responsibility of guarding the safety of courtroom personnel, parties, counsel, jury and audience" and holding that shackling a defendant during trial was not an abuse of discretion where courtroom safety was at risk).

The Court concluded that, despite the disguise, the reliability of the prosecution witness's testimony was, "otherwise assured, because (1) he was physically present in the courtroom, (2) he testified under oath, thus impressing him with the seriousness of the matter and the possibility of penalty for perjury, (3) he was subject to cross-examination while Appellant could see him, (4) despite his disguise, the jury was able to hear his voice, see his entire face including his eyes and facial reactions to questions, and observe his body language." *de Jesus-Casteneda*, 705 F.3d at 1120-21. The Court further noted that "there may be instances in which a witness's testimony in disguise might give rise to a due process violation in certain circumstances by prejudicing the jury against the

7

defendant." *Id*. at 1121.  In such situations, the Court suggested "an alternative solution might [be] to seal the courtroom, thereby protecting the [confidential informant's] identity from the public."  *Id*.

Like the confidential informant in *de Jesus-Casteneda*, the CHS in this case has good reason to fear for his safety if his true identity is revealed to the public. The CHS assists the FBI with national security investigations targeting individuals that claim to live overseas and to be affiliated with designated FTOs.  Many of these individuals view the United States as an enemy, and desire injure or kill Americans.  Needless to say, these individuals would have a keen interest in identifying the CHS to either end his cooperation or to target the CHS or his family overseas in retaliation for his cooperation.  In short, revealing the CHS's true identity poses a significant threat to the CHS, the CHS's family, and may affect future national security investigations.  Thus, there is good reason for the Court to take appropriate steps to protect the CHS's identity in this case.

<u>Request to Allow CHS to Testify Under an Alias</u>

The CHS's true name has no relevance to any issue at trial.  Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evidence of the CHS's true name has no bearing upon a determination of whether the defendant

lied to the FBI about statements he previously made to the CHS when the evidence of the previous statements are preserved in written record. Under Fed. R. Evid. 402, "[e]vidence which is not relevant is not admissible." Consequently, evidence of the CHS's true name should be excluded by this Court in the exercise of its discretion.

	Request to Seal the Courtroom for CHS Testimony

	To mitigate the threat to the CHS's safety, the United States respectfully requests that the Court seal the courtroom from the public during the CHS's testimony in this case. The *de Jesus-Casteneda* Court noted that such a measure may be appropriate when a witness testifying in disguises might give rise to a due process violation by prejudicing the jury against the defendant. *de Jesus-Casenenda*, 705 F.3d at 1121. Examples of such situations include when the disguise might give the jury the impression that the defendant is particularly dangerous, or if it might suggest that the witness is particularly valuable to law enforcement and therefore is particularly credible. *See Id.*

	Here, although Alameti has communicated with the CHS via electronic means, the two have never met in person. Thus, there is less risk of threat to the CHS's safety if only the jury, the parties, and the Court see the CHS, than if the general public, or a member of the media, sees the CHS, captures his image, and disseminates it in the public. Moreover, sealing the courtroom will guard against

the two examples of potential concern with witnesses testifying in disguise raised by the *de Jesus-Casteneda* Court: suggesting to the jury that the defendant is particularly dangerous or that the CHS is particularly credible. *de Jesus-Casenenda*, 705 F.3d at 1121.

Alternative Request to Allow the CHS to Testify in Disguise

While it is true that a district court retains discretion to impose security measures during trial, closing the courtroom during a proceeding can implicate the defendant's Sixth Amendment right to a public trial. *See e.g. United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003); *United States v. Ivester*, 316 F.3d 955, 958 (9th Cir. 2003). If the Court determines that closure is inappropriate here, the United States alternatively requests that the Court allows the CHS to testify in a disguise.

Like his true name, the CHS's true image has no bearing on whether Alameti lied to the FBI weeks after his electronic communications with the CHS ended. The CHS's true image is therefore not relevant to any matter that will be at issue at trial other than the CHS's credibility. And, as stated above, this Court has reasonable discretion to take steps to allow the jury to assess the CHS's credibility without disclosing the CHS's true name or image.

If the Court grants this request, the United States anticipates that the CHS will utilize the following means of disguise while testifying:

10

1. To testify under the alias "John Doe" to protect his true name;

2. To wear a wig or hat to alter the appearance of hair color and style;

3. To wear a false beard or mustache to cover his face;

4. To wear false eyeglasses to cover his face but allow the jury to see his eyes;

5. To wear loose fitting clothing over a vest or body suit to alter the appearance as to bodyweight; and

6. To wear lifts in his shoes to alter the appearance of height.

If these requests are granted by the Court, the United States anticipates that the jury would be told from the outset that the CHS has taken measures to alter his normal appearance. This could be done by either a special instruction from the Court or simply elicited through examination by the parties.

As highlighted above, the Ninth Circuit has expressly authorized a witness testifying in disguise to protect the witness's safety. It is clear that the CHS's safety here could be placed at risk if his true identity were to be disclosed. Allowing the CHS to testify in disguise will mitigate the threat to his safety while at the same time ensuring that Alameti has a right to confront the witness through cross-examination. Finally, the jury will be able to adequately assess the CHS's credibility because he will be physically present in the courtroom; he will be under oath; he will be subject to cross-examination while the defendant can see him; and the jury will be able to hear his voice, see his face, including his eyes and facial

reactions to questions, and observe his body language. *See de Jesus-Casteneda*, 705 F.3d at 1120-21.

## STATEMENT OF OPPOSING PARTY'S POSITION ON MOTION

The undersigned contacted the defense and they do not oppose the request to allow the CHS to testify under an alias nor to testify in a sealed courtroom.

## STATEMENT REGARDING EVIDENTIARY HEARING, WITNESSES, AND ORAL ARGUMENT

Because this motion is unopposed, the United States does not believe that an evidentiary hearing or oral argument will be necessary to resolve this matter. However, should the Court desire to conduct an evidentiary hearing, the United States may call the following witness(es) to testify:

- Special Agent John P. Thomas, FBI

## EXHIBITS

The motion includes the following attachment(s):

- Exhibit 1 – Affidavit in Support of Criminal Complaint, filed in Cause No. MJ-19-29-M-JCL

//

//

//

//

//

## CONCLUSION

Based on the foregoing, the United States respectfully requests that the Court grant the prosecution's Motion in *Limine* by allowing the CHS to testify under the alias "John Doe," and to seal the courtroom during his testimony.

DATED this 31st day of July, 2019.

KURT G. ALME
United States Attorney

*/s/ Jeffrey K. Starnes*
JEFFREY K. STARNES
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I certify that the United States' Motion in *Limine* is in compliance with L. R. 7.1(d)(2) and CR 12.1. The brief's line spacing is double spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 2,798, excluding tables and certificates).

DATED this 31st day of July, 2019.

>KURT G. ALME
>United States Attorney
>
>*/s/ Jeffrey K. Starnes*
>JEFFREY K. STARNES
>Assistant U.S. Attorney