```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MONTANA
                         BUTTE DIVISION
```

FILED
AUG 1 2 2019
Clerk, U S District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FABJAN ALAMETI,<br><br>Defendant. | CR 19–13–BU–DLC<br><br>ORDER |

Before the Court is the United States' Motion *in Limine* (Doc. 27). Pursuant to Federal Rule of Evidence 104(a), the prosecution seeks a preliminary order from the Court to allow one of its witnesses, an FBI confidential informant, commonly referred to as a confidential human source ("CHS"), to testify under an assumed name at trial. The prosecution further requests that either the courtroom be sealed from the public during the CHS's testimony or, in the alternative, that the CHS be allowed to testify in a disguise. The prosecution asserts that these measures are necessary to protect the witness's safety. The motion is unopposed.

The Sixth Amendment grants a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *United States v. de Jesus-Casteneda*, 705 F.3d 1117, 1119 (9th Cir. 2013). A criminal defendant's right to cross-examination includes the right to face physically those

-1-

who testify against him and to ensure that the witness gives his statement before the jury so the jury may observe the demeanor of the witness. *Coy v. Iowa,* 487 U.S. 1012, 1017 (1988); *Maryland v. Craig,* 497 U.S. 836, 851 (1990). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Furthermore, district courts retain discretion to impose reasonable security measures in the courtroom. *See United States v. Shryock*, 342 F.3d 948, 974 (9th Cir. 2003) (finding security measures imposed were reasonable in light of known history of Mexican Mafia to use violent action to disrupt the judicial process).

In *United States v. De Jesus-Casteneda*, 705 F.3d 1117, 1120 (9th Cir. 2013), the Court found that a testifying witness's disguise in the form of a wig and mustache was necessary to further an important state interest, namely, the safety of the witness. In that case, the witness was a confidential informant involved in investigations of the Sinaloa Cartel who feared that revealing his true identity would pose a significant danger. *Id.* The Ninth Circuit concluded that despite the disguise, the reliability of the confidential witness's testimony was otherwise

assured because "(1) he was physically present in the courtroom, (2) he testified under oath, thus impressing him with the seriousness of the matter and the possibility of penalty for perjury, (3) he was subject to cross-examination while [the defendant] could see him, [and] (4) despite his disguise, the jury was able to hear his voice, see his entire face including his eyes and facial reactions to questions, and observe his body language." *De Jesus-Casteneda*, 705 F.3d at 1120–21. Thus, the Ninth Circuit found that the disguise allowed for the preservation of the Defendant's cross-examination rights while also protecting the witness's safety. Alternatively, the Court suggested that courtroom could be sealed. *Id.* at 1121.

Here, the government asserts that the CHS currently assists the FBI with national security investigations targeting potential terrorists who claim to live in the Middle East, that the CHS has family members who reside in the Middle East, and that public disclosure of the CHS's true identity or true image would pose significant risk to the CHS's safety or the safety of those family members who reside overseas. To mitigate this threat, the prosecution requests that the witness be allowed to testify under the alias "John Doe" and that he be allowed to testify in a sealed courtroom. The Court agrees that the CHS's safety would be imperiled were he to testify without any precautions. Consequently, the Court will allow him

to testify under the alias "John Doe." However, the Court does not agree that sealing the courtroom during the CHS's testimony is the correct course here.

The closure of trial implicates the right to a public trial secured by both the First and Sixth Amendments. *United States v. Yazzie*, 743 F.3d 1278, 1286 (9th Cir. 2014). In the First Amendment context, the right of a public trial is that of the "press and public" which "allows citizens to exercise their constitutionally protected right to discuss governmental affairs in an informed manner." *Id.* In that context, there is a "presumption of openness" that "may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984) (internal quotation marks and citation omitted). "The court must articulate the interest at stake along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Yazzie*, 743 F.3d at 1286 (internal quotation marks and citation omitted).

In the context of the Sixth Amendment, "[t]he requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their

functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (internal quotation marks and citations omitted). Aside from ensuring "that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Id.* "Essentially, the public-trial guarantee embodies a view of human nature, true as a general rule, that judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." *Id.* at 46 n. 4. (quoting *Estes v. Texas*, 381 U.S. 532, 588 (1965) (Harlan, J., concurring)).

This is not to say that any closure implicates the Defendant's right to a public trial. The Ninth Circuit applies a four-factor test to determine whether a closure violates the Sixth Amendment. *Yazzie*, 743 F.3d at 1287. First, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced." *Waller*, 467 U.S. at 48. Second, "the closure must be no broader than necessary to protect that interest." *Id.* Third, the Court "must consider reasonable alternatives to closing the proceeding." *Id.* Finally, the Court "must make findings adequate to support the closure." *Id.* As this test is largely overlapping with the test to be applied in regards to the viability of a closure under the First Amendment, the Court combines the analyses here.

First, as discussed above, the overriding interest is the safety of the witness and his family. And this interest would likely be jeopardized by having an active informant operating within terrorist organizations testify publicly. As stated by the Government "these individuals would have a keen interest in identifying the CHS to either end his cooperation or to target the CHS or his family overseas in retaliation for his cooperation." (Doc. 28 at 8.) Second, the broadness of the closure would need to be defined by the length of the witness's testimony. Several charges against Defendant—three counts of False Statement to a Federal Officer in a Matter Involving Terrorism—appear to rest heavily upon Defendant's statements to the CHS and, accordingly, the CHS's testimony has the potential to be a large and central portion of the trial. In other words, this would not be a "trivial closure." *United States v. Ivester*, 316 F.3d 955, 959 (9th Cir. 2003) ("A trivial closure does not violate the Sixth Amendment."). This brings us to the third factor, reasonable alternatives. The use of a disguise is a practical and valid alternative in this instance and would preserve Defendant's Sixth Amendment rights to cross-examination and a public trial as well as the press and public's First Amendment right to a public trial. *See De Jesus-Casteneda*, 705 F.3d at 1120–21. Accordingly,

IT IS ORDERED that the United States' Motion *in Limine* (Doc. 27) is GRANTED.

IT IS FURTHER ORDERED that the CHS may:

1. Testify under the alias "John Doe" to protect his true name;

2. Wear a wig or hat to alter the appearance of hair color and style;

3. Wear a false beard or mustache to cover aspects of his face;

4. Wear false eyeglasses to cover his face while allowing the jury to see his eyes;

5. Wear loose fitting clothing over a vest or body suit to alter his appearance as to bodyweight; and

6. Wear lifts in his shoes to alter the appearance of his height.

DATED this 12th day of August, 2019.

*/s/ Dana L. Christensen*
Dana L. Christensen, Chief Judge
United States District Court