**JEFFREY K STARNES**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT 59403**
**119 First Ave. North, #300**
**Great Falls, MT 59401**
**Phone: (406) 761-7715**
**FAX: (406) 453-9973**
**Email: Jeff.Starnes@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **FABJAN ALAMETI,** <br><br> Defendant. | **CR 19-13-BU-DLC** <br><br><br> **OFFER OF PROOF** |

## INTRODUCTION

Plaintiff, United States of America, by and through its counsel of record, Jeffrey K. Starnes, Assistant U.S. Attorney for the District of Montana, hereby files its Offer of Proof in the above-styled case.

1

## THE CHARGES

The defendant is charged by indictment with three counts of making a false statement to a federal officer in a matter involving terrorism, in violation of 18 U.S.C. § 1001 ("Counts I-III"), and one count of possessing a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3) ("Count IV"). (Doc. 10).

## PLEA AGREEMENT

Pursuant to a plea agreement, the defendant will enter a voluntary plea of guilty to Counts I and III, and to a general waiver of his appellate rights. In exchange for his guilty plea, the United States will move to dismiss Counts II and IV at sentencing if the District Court accepts the defendant's guilty plea. The plea agreement filed with the Court represents the most favorable offer extended to the defendant. *See, e.g., Missouri v. Frye,* 566 U.S. 134 (2012).

## PENALTY

Counts I and III each carry a maximum punishment of eight years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

//

//

## ELEMENTS

In order for the defendant to be found guilty of the charges contained in Counts I and III, making a false statement in a matter involving terrorism, the United States must prove the following elements beyond a reasonable doubt:

- First, the defendant knowingly made a false statement in a matter within the jurisdiction of the Federal Bureau of Investigation;

- Second, the defendant acted willfully, that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful;

- Third, the statement was material to the activities or decisions of the Federal Bureau of Investigation, that is, it had a natural tendency to influence, or was capable of influencing the agency's decisions or activities; and

- Fourth, the statements were made in relation to a matter involving international or domestic terrorism.

With respect to materiality, the Ninth Circuit holds: "The false statement need not have actually influenced the agency, and the agency need not rely on the information in fact for it to be material. *United States v. Serv. Deli Inc.*, 151 F.3d

938, 941 (9th Cir. 1998); *see also United States v. King*, 735 F.3d 1098, 1108 (9th Cir. 2013).

**ANTICIPATED EVIDENCE**

If this case were tried in the United States District Court, the United States would prove the following:

1. On October 15, 2004, the U.S. Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act (the "INA") and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a Specially Designated Global Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the FTO listing: the Islamic State of Iraq and al-Sham (*i.e.*, "ISIS"—which is how the FTO will be referenced herein), the Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. In an audio recording publicly released on June 29, 2014, ISIS announced a formal change of its name to the Islamic

State.  On September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS.  To date, ISIS remains a designated FTO.

2.     On or about May 15, 2018, as part of a terrorism investigation, law enforcement officers in New York City interviewed the defendant at his home in the Bronx, New York.  During the interview, the stated that he owned and utilized a Facebook account in the name of "Fabjan Alamati."

3.     In January of 2019, an FBI Confidential Human Source began reporting on an individual later identified as the defendant, who had been posting pro-ISIS comments on pro-ISIS Facebook pages.  The Source reported that he originally made contact with the defendant on Facebook, and then subsequently engaged the defendant in private direct messages via an encrypted electronic messaging application.  The Source represented to the defendant that he was an ISIS supporter who lived in the Middle East.

4.     The defendant told the Source via text message that he was planning to travel to Syria to fight with ISIS.  The defendant also stated that he had been considering conducting an attack in the United States.  Some of the defendant's statements to the Source included the following:

5

a. On February 11, 2019, the defendant sent a message to the Source stating, "I wanna go kill some fags." When the Source replied that they needed three months to plan, the defendant replied, "We need arms ammo and explosives," "And also the uhaul," and "Gasoline mixed in with explosives will make a good blast also it will burn longer;"

b. On February 22, 2019, the defendant shared a screenshot with the Source of a chart showing blast radius by vehicle type and stated "Small boxer van is uhaul. That a [sic] blast up to 2750 feet;"

c. Between February 27, 2019 and February 28, 2019, the defendant sent the Source a series of messages, including:

- "When will the time come for us to hunt them down. I will stand over them while I pierce their bodies with hollow tips. Inshallah we take as many kuffars[1] with us. For the brothers who died and the kids and women."

- "We need extensive research on our ideal target." When the Source asked what targets, the defendant replied, "Like I

---

[1] "Kuffar" is a term meaning non-believer.

6

said any military facilities or simply a recruiting center. But there is options for choices."

- The Source asked if the defendant thought bombs were a must, and the defendant replied, "When looking for explosives we are subject to inspection. We must make it our self," and "But if we can't try then the guns are the ideal weapons."

- The defendant also stated "I am doing it for the Hadith[2] of eye for eye and blood for blood since America has killed our Muslim civilians."

5.     In March 2019, the FBI executed a federal search warrant on the defendant's Facebook account.   A review of the account revealed a series of communications between the defendant and another individual in Albanian.   An FBI linguist translated a series of messages between the defendant and the other individual between January 26 and February 27, 2019, wherein the defendant told the other individual that he intended to travel to Iraq and fight, and that he was in contact with a person who would facilitate his travel.   The individual who the

---

[2] A Hadith is a collection of traditions containing sayings of the prophet Muhammad, which constitute a major source of guidance for Muslims apart from the Qur'an.

defendant believed would facilitate his travel was, in fact, the FBI Source described in paragraphs 3 and 4 above.  Further review of the defendant's Facebook account showed that between December 27, 2017, and January 1, 2018, the defendant told another individual via a communication on Facebook, "Inahallah[3] [sic] i come to arish[4] [sic] to join ISIS."

      6.     On March 13, the defendant sent a message to the Source stating that he purchased a bust ticket to travel from New York to Bozeman, Montana.  The defendant sent the Source a screen shot of his ticket in the name "Fabjan Alameti." The next day, the defendant messaged the Source and said that he was on a bus to Montana, that he had a job interview, and "I wish I would have fought with u there. I wanted to be marterd [sic] with you."

      7.     On March 15, 2019, during a series of conversations with the FBI Source, the defendant asked the Source to send him a video link to the breaking news of an attack on a mosque in Christchurch, New Zealand that killed fifty Muslims.  The Source responded to the request by stating:  "Akhi[5] the video is heart wrenching walla u don't even wanna see it."  The defendant replied, "I have to akhi", "I [sic] will fuel me," and, "To plot please send it akhi." The Source

---

[3] Inshallah is an Arabic term meaning "if Allah wills it."
[4] Al-Arish is an Egyptian Mediterranean coastal town located on the Sinai Peninsula.
[5] "Akhi" is an Arabic term meaning "my brother."

messaged, "Fuel you for what akhi are sure you wanna act like the kuffar and attack a church or something?"  In response, the defendant stated "No not a church," and "But I will attack random people to avenge the blood."  The Source messaged, "But akhi are you sure its [sic] halal[6] to shoot random people and act like the kuffar did to us."  The defendant responded, "Of course akhi," "We must ave he [sic] the death and even a single drop of blood should be avenged akhi," "Muslim blood is precious," and "I'm gonna buy a gun in Montana."

8.   The defendant arrived in Bozeman, Montana on March 17, 2019.  He purchased a room at the Bozeman Inn, and paid cash for a six-day stay.  However, he was evicted from the Hotel on March 20, 2019, when it was discovered that he was smoking marijuana in his room.  On the evening of March 20, the defendant checked into a hostel and paid for one week.

9.   On March 25, 2019, a Bozeman emergency medical technician team responded to the hostel and transported the defendant to the hospital where he was treated for acute alcohol intoxication.  After he was transported, the hostel manager secured the defendant's belongings and found what was believed to be a handgun.  The manager contacted the Bozeman Police Department, who came and collected the defendant's belongings.  The hostel manager told the police that the

---

[6] "Halal" is an Arabic term meaning "permissible".

defendant was banned from the hostel and the police told the manager to direct the defendant to the police department to retrieve his belongings.

10.     Upon release from the hospital, the defendant walked to the police station and agreed to speak with a police detective and FBI Special Agent Matthew Deurmeier.   During the interview, SA Deurmeier identified himself as an FBI special agent and advised the defendant several times that it was unlawful for the defendant to provide false information during the course of the interview.   During the interview, the defendant stated, that he had never talked about traveling overseas to fight for ISIS, or words to that effect; and that he has never said that he wanted to hurt any Americans or anyone in the military, or words to that effect.

11.     During the interview, the defendant consented to a search of his cellular phone.   A review of the phone showed Internet searches in January and February 2019 for the phrases:   "liveleak stabbed to death," "muslims kill liveleak," "us soldiers and pkk killed," "isis sinai wiki," "what countries can I visit with Albanian passport," "nyc to Albania to Jordon [sic]," "islamic state," and "isis attacks liveleak," "federal buildings in nyc," "tactical knives for sale," "taxi driver gets stabbed liveleak," "taxi driver gets shot liveleak," "police ambushed liveleak," "isis live map," "Holland tunnel," "car bomb," and "isis jihadology."

12. On April 3, 2019, the FBI arrested the defendant at a shooting range in Bozeman. During a *Mirandized* interview with the FBI, the defendant admitted that he had previously told others, including the contact on Facebook identified in paragraph 5 above, that he planned to travel overseas and fight for ISIS because he wanted to die a martyr's death. The defendant admitted that he had previously discussed a plan to fly from New York to Albania to meet a contact, and from there, they would travel to Syria via Jordan. The defendant said that, once he was in Syria, he planned to go to a training camp where he could learn how to use weapons and make explosives. The defendant admitted that he looked at airplane tickets but he did not have enough money at that time to make the trip.

13. The defendant also admitted to exchanging messages with the FBI Source. The defendant said that before he left to come to Montana, he talked with the FBI Source about targeting people in the United States, and he identified potential targets as gay night clubs, a federal building, and an Army recruiting center. The defendant admitted to talking with the FBI Source about explosives and admitted sending the Source an Internet link to access a file discussing how to make explosives. Finally, the defendant admitted to making various statements to the Source, including that he wanted to "shoot people or something," "I will attack

random people to avenge the blood," and, "I'm going to Montana and gonna [sic] buy a gun since all they need is a background check and ID."

The United States would have presented the above information through the testimony of law enforcement, expert and lay witnesses, and through the introduction of various exhibits.

RESPECTFULLY SUBMITTED this 26th day of August, 2019.

KURT G. ALME
United States Attorney


/s/ *Jeffrey K. Starnes*
JEFFREY K. STARNES
Assistant U. S. Attorney
Attorney for Plaintiff